**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 16, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

HUGO ANTONIO ROMERO-MENCIA,

    Defendant - Appellant.

No. 24-2158
(D.C. No. 2:24-CR-00505-MIS-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, Chief Judge, **TYMKOVICH**, and **MORITZ**, Circuit Judges.
_____

Hugo Antonio Romero-Mencia, a native and citizen of Honduras, pled guilty

to one count of re-entry of a removed alien. *See* 8 U.S.C. § 1326(a)(1), (a)(2), (b)(2).

The district court sentenced him to 24 months' imprisonment, an upward variance

from the United States Sentencing Guidelines ("Guidelines") advisory range of 6 to

12 months' imprisonment.  Mr. Romero-Mencia appeals that sentence, arguing that it

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

was substantively unreasonable.  Exercising jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, we affirm the district court's judgment.

## I.    BACKGROUND

An information charged Mr. Romero-Mencia with one count of re-entry of a removed alien, alleging that the re-entry offense occurred on March 7, 2024.  The information noted that Mr. Romero-Mencia had previously been deported from the United States to Honduras on December 4, 2023.  Mr. Romero-Mencia pled guilty to the charge without a plea agreement.

A probation officer prepared a presentence report ("PSR").  The PSR calculated a total offense level of 10, which included a four-level enhancement for a prior felony conviction under USSG § 2L1.2(b)(2)(D).  The PSR indicated that Mr. Romero-Mencia had prior state court convictions for lewd or lascivious conduct, soliciting a child using computer services or devices, and transmission of material harmful to minors.  The PSR included the following information about the Florida offenses.  Mr. Romero-Mencia sent sexually explicit messages to a 14-year-old girl via WhatsApp that included statements about sexual interactions and contact he wanted to have with her.  Mr. Romero-Mencia also sent sexual images and memes to the victim and told her that he wanted to shower with her.  A forensic interview with the victim revealed that Mr. Romero-Mencia had kissed her on the lips at a local grocery store and subsequently left his phone in the victim's father's car.  Mr. Romero-Mencia and the victim later discussed how to hide and continue their relationship.  Upon conviction, Mr. Romero-Mencia received 15 years' probation,

2

and removal proceedings were initiated against him.  He was deported to Honduras on December 4, 2023.

The PSR noted that Mr. Romero-Mencia was found back in the United States on March 7, 2024, three months after his removal.  A warrant from Florida authorities was issued for Mr. Romero-Mencia for violating the conditions of probation for his Florida offenses due to his arrest for the instant offense.

The PSR noted that the maximum term of imprisonment for the re-entry conviction is 20 years.  *See* 8 U.S.C. § 1326(a)(1), (2), (b)(2).  The PSR calculated Mr. Romero-Mencia's Guideline range was 6 to 12 months' imprisonment.

Before the sentencing hearing, the district court informed the parties that it was considering imposing an upward departure or variance.  In response, the government requested that the court sentence Mr. Romero-Mencia to 18 months' imprisonment.  In support, the government cited Mr. Romero-Mencia's prior Florida convictions and his illegal re-entry into the United States after having been removed just three months earlier, as demonstrating a disregard for the laws of the United States.

At the sentencing hearing, the government reiterated its request for an upward variance based on Mr. Romero-Mencia's prior convictions and the quick turnaround between his removal and his return to the United States.  Counsel for Mr. Romero-Mencia argued that an upward variance was unnecessary because Mr. Romero-Mencia had no other criminal history outside of the Florida convictions and that he returned to the United States out of necessity to support himself and his

parents. Defense counsel also addressed the Florida convictions, arguing that, though Mr. Romero-Mencia's conduct was inappropriate, it was not as bad as it could have been, since Mr. Romero-Mencia did not sexually assault or harm the victim. He also noted that the relationship between Mr. Romero-Mencia and the victim was "a connection based on cultural ties and on history of Honduras" because they were both from Honduras. R. vol. III at 7. Counsel asked the district court to consider that Mr. Romero-Mencia faced extradition to Florida and removal to Honduras. Mr. Romero-Mencia allocuted, acknowledging that his actions in the Florida convictions were wrong and promising not to return to the United States.

The district court announced that it would impose a 24-month sentence. In addressing the Florida convictions, the court found, based on the messages where he discussed hiding the relationship from others, that Mr. Romero-Mencia knew pursuing a relationship with a 14-year-old was wrong, and it noted that it would be imposing a higher sentence if Mr. Romero-Mencia had had any further sexual contact with the Florida victim. The court also noted that Mr. Romero-Mencia did not serve time for the Florida conviction, was instead removed to Honduras, that he "immediately" "turned around and started the long journey from Honduras through Mexico," and was back in the United States "about two and a half months later." R. vol. III at 12.

The district court adopted the PSR's factual findings and considered the applicable 18 U.S.C. § 3553(a) factors. The court considered the parties' arguments, including Mr. Romero-Mencia's mitigating factors concerning his criminal history

4

and his reasons for returning to the United States from Honduras. The court found that a 24-month sentence was not greater than necessary to serve the purposes of sentencing and specifically noted that the nature and circumstances of the offense were serious—Mr. Romero-Mencia returned to the United States "after having been deported less than three months prior, and that deportation occurred after his conviction for an attempted sexual relationship with a 14-year-old." R. vol. III at 13; *see* 18 U.S.C. § 3553(a)(1). The court considered, among other things, the need for adequate deterrence, since Mr. Romero-Mencia had not been deterred by the probationary sentence from the Florida case as evidenced by his immediate return to the United States. *See* 18 U.S.C. § 3553(a)(2)(B). The court noted that no one had argued there would be sentencing disparity between Mr. Romero-Mencia's sentence and those of other defendants with similar records, but it found that any such disparity was warranted by Mr. Romero-Mencia's conduct, including his return to the United States "so quickly after being given probation for a sex crime involving a child." R. vol. III at 14-15; *see* 18 U.S.C. § 3553(a)(6). Finally, the district court emphasized a need to protect the public from Mr. Romero-Mencia, as he had previously victimized a 14-year-old girl. *See* 18 U.S.C. § 3553(a)(2)(C). The court stated that, while it was not attempting to resentence Mr. Romero-Mencia for the Florida offense, it did consider the Florida offense as a relevant part of the § 3553(a) factors to sentence Mr. Romero-Mencia for illegal re-entry.

Mr. Romero-Mencia timely appealed.

## II.    DISCUSSION

### i.    Standard of review.

Mr. Romero-Mencia argues that his sentence was substantively unreasonable. The district court must impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a).[1]  Substantive reasonableness is a question of how the district court considered "the totality of the circumstances in light of the 18 U.S.C. § 3553(a) factors."  *United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018) (internal quotation marks omitted).  "[N]o algorithm exists that instructs the district judge how to combine the factors or what weight to put on each one."  *Id.* at 916.  Thus, when faced with a substantive reasonableness challenge, "courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard."  *Gall v. United States*, 552 U.S. 38, 41 (2007).

### ii.    The district court provided adequate justification for the upward variance.

---

[1] Section 3553(a) directs the court to consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, protect the public from future crimes of the defendant, and provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the applicable guidelines range; (5) the Guidelines' pertinent policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide victim restitution.

Mr. Romero-Mencia first argues that the district court failed to provide justification for the upward variance, and that, while it "invoked the relevant factors," the court did not provide adequate explanation for why a sentence "significantly above" the Guidelines range was the least necessary to serve sentencing purposes. Aplt. Opening Br. at 8. He asserts that he poses no realistic danger to the public because he is facing a probation violation in Florida "and certain deportation once his time served in Florida is over." *Id.* at 10.

The record belies Mr. Romero-Mencia's assertion that the district court did not adequately explain its consideration of the § 3553(a) factors and its reasons for imposing a sentence beyond the suggested Guidelines range. *See United States v. Valdez*, 128 F.4th 1314, 1318 (10th Cir. 2025) (stating that "[s]entencing is not a one-size-fits-all for every crime" and upholding a sentence where the district court's explanation "was thorough and considered the statutory-sentencing objectives"). The district court provided a lengthy explanation within the context of the facts of Mr. Romero-Mencia's offense. It expressed concern with the seriousness of Mr. Romero-Mencia's Florida convictions since they involved sexual victimization of a minor, and the quick turnaround on his re-entry to the United States, which indicated a potential danger to the public and a lack of respect for the law. 18 U.S.C. § 3553(a)(1)-(6); *see Barnes*, 890 F.3d at 915. Further, the facts relating to Mr. Romero-Mencia's Florida convictions are relevant to this case, as his Florida convictions were the catalyst for his initial removal from the United States.

7

The record also contradicts Mr. Romero-Mencia's assertion that he poses no realistic danger to the public, given his history of victimizing a 14-year-old girl. The prospect of removal does not mitigate any general risk Mr. Romero-Mencia poses to the public upon release. Nor does it lessen the potential public danger if he were to reenter the United States after his next removal, which is a possibility given his conduct following the Florida convictions. The record supports the district court's § 3553(a) analysis, which includes considering the context of a defendant's potential danger to the public and lack of respect for the law. *See* 18 U.S.C. § 3553(a)(1), (2).

### iii.    The district court properly considered Mr. Romero-Mencia's behavior and prior conviction in sentencing.

Mr. Romero-Mencia next argues that his behavior was not unusual or dangerous in comparison to other illegal re-entry cases. He offers no support for this claim, outside of calling his crime "a run of the mill reentry." Aplt. Opening Br. at 8. Mr. Romero-Mencia also argues that the district court improperly imposed an upward variance based on his criminal history, not based on the facts of the instant illegal re-entry. He asserts that, because the Guidelines accounted for his prior convictions by imposing a 4-level enhancement under USSG § 2L1.2(b)(2)(D), the district court's reliance on the prior convictions lacked justification.

"[W]e uphold even substantial variances when the district court properly weighs the § 3553(a) factors and offers valid reasons for the chosen sentence." *Barnes*, 890 F.3d at 916. And "we must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*

8

at 917 (internal quotation marks omitted). As discussed above, the district court provided detailed rationale behind its decision to vary upward in sentencing. Further, the USSG. § 2L1.2(b)(2)(D) enhancement is a general enhancement that applies to any felony conviction before deportation. *See* U.S.S.G. § 2L1.2(b)(2)(D) ("If, before the defendant was ordered deported or ordered removed from the United States for the first time, the defendant engaged in criminal conduct that, at any time, resulted in . . . a conviction for any other felony offense (other than an illegal reentry offense), increase by 4 levels[.]"). Accordingly, that enhancement did not account for the facts and background of the Florida convictions, and the enhancement does not specifically account for the speed with which Mr. Romero-Mencia re-entered the United States. *See id.*

In any event, it was not an abuse of discretion for the district court to consider, as a factor supporting an upward variance, Mr. Romero-Mencia's re-entry into the United States just three months after removal following convictions for sex crimes involving a child. *See* 18 U.S.C. § 3553(a)(1); *Gall*, 552 U.S. at 41. We have previously upheld an upward variance imposed in an illegal reentry case where the defendant had a prior conviction for child sexual abuse and "rapidly returned to the United States" after removal resulting from that conviction, holding that the severity of the recently relevant conduct "was relevant to the seriousness of [the defendant's] reentry offense." *United States v. Vazquez-Garcia*, 130 F.4th 891, 902, 903 (10th Cir. 2025). Just like in *Vazquez-Garcia*, the district court in this case did not

9

abuse its discretion by considering Mr. Romero-Mencia's prior criminal conduct and rapid reentry into the United States.  *See id.*

  iv. **The district court did not create an unreasonable sentencing disparity when it varied upwards.**

  Lastly, Mr. Romero-Mencia argues that his sentence creates an unreasonable disparity in sentences.  *See* 18 U.S.C. § 3553(a)(6) (requiring the district court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").  He states that his 24-month sentence is "almost five times the average and five times median sentence of similar cases over the last five year period."  Aplt. Opening Br. at 12.  He also states that the average and median lengths of imprisonment for defendants with the same offense level and criminal history as Mr. Romero-Mencia are five months.

  We have held that "bare national statistics do not shed light on the extent to which the sentences that the statistics pertain to involve defendants that are similarly situated to [the defendant here]."  *United States v. Garcia*, 946 F.3d 1191, 1215 (10th Cir. 2020).  Without placing nationwide statistics "in a meaningful context," the comparison is "unhelpful for determining the substantive reasonableness of [the] sentence for [Mr. Romero-Mencia's] unique crime."  *Id.*  Where a district court gives an otherwise sufficient explanation for the imposed sentence, "bare national statistics" without specific information about comparators' individual history and characteristics cannot defeat the sufficiency of the district court's explanation.  *See, e.g., United States v. Cortez*, 139 F.4th 1146, 1156-57 (10th Cir. 2025) (internal

quotation marks omitted); *Valdez*, 128 F.4th at 1318-19. While Mr. Romero-Mencia has identified national statistics that indicate that his sentence is longer than average, he provided no other information to show how he is similarly situated with those in the national average, and the district court provided sufficient explanation for the upward variance when it conducted its § 3553(a) analysis. *Garcia*, 946 F.3d at 1215. Specifically, the court referenced a need to protect the public, to promote respect for the law, and the nature and severity of the offense, citing both the quick timeline of illegal reentry and the sexual offense that predicated Mr. Romero-Mencia's initial removal from the United States. Mr. Romero-Mencia has not pointed to any specific comparator groups or cases that demonstrate that the district court's proffered explanation is insufficient, and therefore his argument is foreclosed by circuit precedent. *Id.*

## III.    CONCLUSION

In sum, the district court appropriately considered the § 3553(a) factors and adequately explained that the sentence it imposed on Mr. Romero-Mencia was reasonably calculated as "sufficient, but not greater than necessary" to satisfy the specific sentencing considerations of deterrence, protection of the public, and the severity of the nature and circumstances of Mr. Romero-Mencia's offense conduct. *See* 18 U.S.C. § 3553(a)(1); *Gall*, 552 U.S. at 41; *Vazquez-Garcia*, 130 F.4th at 902-03. The district court thoroughly explained the imposed sentence, and nothing in the record suggests an abuse of its discretion in conducting its § 3553(a) analysis. *See Gall*, 552 U.S. at 41; *Valdez*, 128 F.4th at 1318.

We affirm the district court's judgment.

Entered for the Court

Jerome A. Holmes
Chief Judge